DAYLE ELIESON
United States Attorney
CRISTINA D. SILVA
Assistant United States Attorney
Nevada Bar No. 13760
PATRICK BURNS
Assistant United States Attorney
Nevada Bar No. 11779
NICHOLAS D. DICKINSON
Assistant United States Attorney
501 Las Vegas Blvd. South, Ste. 1100
Las Vegas, Nevada 89101
Phone: (702) 388-5069
Fax: (702) 388-5087
cristina.silva@usdoj.gov
john.p.burns@usdoj.gov
nicholas.dickinson@usdoj.gov

Attorney for the United States of America

FILED
2018 FEB -2 AM 8:54
U.S. MAGISTRATE JUDGE
BY_____

UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA
-oOo-

Az No. 18-105 MJ

| | |
|---|---|
| UNITED STATES OF AMERICA, | COMPLAINT |
| Plaintiff | Magistrate No.   2:18-mj-137-CWH |
| vs. | VIOLATIONS: |
| DOUGLAS HAIG, | 18 U.S.C. § 371 – Conspiracy; |
| Defendant. | 18 U.S.C. §§ 922(a)(7), (a)(8), and 924(a)(1)(D) – Manufacture of Armor Piercing Ammunition |

BEFORE the United States Magistrate Judge, Las Vegas, Nevada, the undersigned Complainant, being duly sworn, deposes and states:

<u>COUNT ONE</u>
Conspiracy to Manufacture and Sell Armor-Piercing Ammunition
(18 U.S.C. §§§ 371, 922(a)(7), (a)(8), and 924(a)(1)(D))

Beginning on a date unknown, but in no event later than July 2016, and continuing through on or about October 2017, in the State and Federal District of Nevada, and elsewhere,

DOUGLAS HAIG,

1

defendant herein, did knowingly and intentionally combine, conspire, confederate and agree with others, known and unknown, to engage in the manufacture and sale of armor piercing ammunition, while not being licensed to do so, contrary to Title 18, United States Code, Sections 922(a)(7), (a)(8), and 924(a)(1)(D). All in violation of Title 18, United States Code, Section 371.

1. Your Complainant is a Special Agent with the FBI currently assigned to the Las Vegas, Nevada Division and has been so employed for over eight years. Prior to this he was employed for over five years as a Deputy Sheriff and Detective with the Orange County Sheriff's Office (Florida). As an FBI Agent, your Complainant is assigned to the FBI's Violent Criminal Threat Squad and is responsible for investigating a variety of violent crimes, to include: bank robbery, kidnapping, extortion, robbery, carjackings, assaults and murders of federal officers, mass killings in public places, racketeering related violent offenses, as well as long-term investigations into the activities and operations of career criminals, criminal enterprises, drug trafficking organizations, and violent street gangs. Your Complainant has experience in conducting criminal investigations, including the investigation of criminal groups and conspiracies as well as the collection of evidence and the identification and use of witnesses.

2. The following information contained within this criminal complaint is based upon your Complainant's participation in this investigation or was provided to him by other law enforcement personnel. All times noted are approximate.

## BACKGROUND OF INVESTIGATION

3. On the evening of Sunday, October 1, 2017, Route 91 Harvest, a music festival, was in progress at 3901 South Las Vegas Boulevard, Las Vegas, Nevada. At approximately 10:08 p.m., the Las Vegas Metropolitan Police Department (LVMPD) received calls reporting shots fired at the concert and multiple victims were struck during the incident. LVMPD determined the shots were coming from Rooms 134 and 135 on the 32nd floor of the Mandalay Bay Resort and Casino, located due west of the festival grounds at 3950 South Las Vegas Boulevard, Las

Vegas, Nevada. These rooms are in an elevated position overlooking the concert venue. Witness statements and video footage captured during the attack suggested that the weapons were being fired in a fully-automatic fashion.

4. LVMPD officers ultimately made entry into the room and located an individual later identified as Stephen Paddock. Paddock was deceased from an apparent self-inflicted gunshot wound.

5. Pursuant to the investigation following the shooting, local search warrants were obtained and executed on Paddock's Mandalay Bay hotel rooms, Paddock's vehicle parked in the Mandalay Bay parking garage, and two Nevada residences owned by Paddock: 1372 Babbling Brook Court, and 1735 Del Webb Parkway, Reno, Nevada. Pursuant to those searches, Officers and Agents found over 20 firearms, hundreds of rounds of unfired ammunition (much of it in preloaded high-capacity magazines), range finding devices, several suitcases (some partially full of pre-loaded high capacity magazines), and hundreds of spent cartridge cases in the Mandalay Bay hotel rooms, in close proximity to Paddock's body. In addition to these items, the search of Paddock's hotel rooms revealed an Amazon.com cardboard shipping box bearing a shipping label marked with the name Douglas Haig and the address 4323 East Encanto Street, Mesa, Arizona. Over a thousand rounds of rifle ammunition and a significant amount of explosive precursor material was found in Paddock's vehicle. Additional explosive precursor material, approximately 18 firearms, and over 1,000 rounds of ammunition were located at the Mesquite residence. A large quantity of ammunition and multiple firearms were recovered from the Reno residence.

### SUMMARY OF STATEMENTS BY DOUGLAS HAIG AND HIS ASSOCIATE

6. The following information is a summary of statements for the purpose of establishing probable cause:

a.  On October 2, 2017, ATF and FBI Agents arranged to interview Douglas Haig and his business partner (identified herein as "Associate)" at their place of employment in Phoenix, Arizona. Initially, Haig was unclear as to whether he had met Paddock, although he told the Agents that he might have met a person matching Paddock's description at a Las Vegas gun show a few months prior. Agents provided Haig with a photo of the Amazon shipping box. After reviewing his phone records and some additional general conversation, Haig and Associate told the Agents that they had in fact met Paddock. Haig and Associate revised their statement and stated they recalled an interaction with Paddock occurring at a Phoenix, Arizona gun show in early-September, 2017.

b.  Haig and Associate stated they met Paddock when he made an effort to purchase bulk ammunition from the booth Haig and Associate operated at the gun show. The transaction could not be conducted that day because the show was closing and Paddock was required to leave the venue. Haig and Paddock exchanged telephone numbers and agreed to coordinate Paddock's future purchase of ammunition from Haig.

c.  According to Haig, he spoke to Paddock via telephone on September 19, 2017, and provided him directions to Haig's residence in order to complete an ammunition purchase from Haig. Upon arriving, Paddock asked to purchase 600 rounds of .308 caliber (7.62mm) "tracer" ammunition and a quantity of .223 caliber ammunition from Haig.[1] According to Haig, he put together Paddock's order and placed it in the Amazon.com shipping box, which was later found in Paddock's room at Mandalay Bay.

---

[1] The term "tracer" denotes ammunition that is chemically treated during manufacture such that it will emit a glow after leaving the muzzle of the firing weapon.

d. Haig also stated that he does reload ammunition,[2] but does not offer these reloaded cartridges for sale to his customers. While investigators were with Haig at his residence, he directed them to his reloading equipment, which was located in a shop in the property's backyard. Interviewing Agents asked Haig directly if any of the ammunition recovered in the Las Vegas crime scenes would have tool marks on them consistent with his reloading tools. Haig was adamant that they would not.

e. Haig indicated that his source for the ammunition like that sold to Paddock was distributors who receive the ammunition in bulk as "overruns" from ammunition plants, such as the Lake City Brass Army Ammunition Plant (also known as the "Lake City Arsenal" or the "Lake City Army Ammunition Plant"). Haig voluntarily provided Agents with a sample of ammunition that he sells to customers. These cartridges were found to have the headstamp markings "LC", which indicates they were initially manufactured at the Lake City Army Ammunition Plant in Independence, Missouri.

f. On October 5, 2017, Agents met with Haig and Associate again to clarify some of their earlier statements. During this interview, Haig and Associate clarified that their first interaction with Paddock was on or about August 27, 2017 at the gun show in Las Vegas, Nevada. During this meeting, Paddock browsed some of the ammunition samples at their booth and ultimately purchased four or five ten round packages of .308 caliber incendiary ammunition from Haig and Associate.

g. Haig and Associate operated another booth at a Phoenix, Arizona gun show over the weekend of September 9-10, 2017. On September 9, 2017, at around 3:30 or 4:00 p.m., Paddock appeared at the booth. Only Associate was in the booth at this time and Paddock

---

[2] The term "reloaded" ammunition refers to ammunition that is manufactured from component parts, including previously fired cartridge cases. This is commonly done in a consumer setting versus a commercial manufacturing operation.

5

attempted to negotiate a deal for various types of ammunition. Associate told him to come back to the booth later, as only Haig could negotiate sales prices. Paddock returned to the booth at around 5:00 p.m., as the show was starting to close. This time he spoke only to Haig. During this meeting, Paddock told Haig that he wanted to purchase a large quantity of tracer ammunition, as much as 500 rounds in .308 caliber and an unspecified amount in .223 caliber. Haig told Paddock that he did not have that much ammunition on hand and that Paddock should call him at a later date to arrange the sale.

h. As he indicated in his prior statement, Haig later met with Paddock at his home on September 19, 2017. During this meeting, Haig stated that Paddock purchased from him 600 rounds of pre-packaged M62 .308 caliber tracer ammunition and 120 rounds of M196 .223 caliber tracer ammunition. Paddock paid for the order in cash and Haig provided the ammunition to him in the previously identified Amazon.com shipping box, which had been located in Haig's garage. Haig noted that Paddock took the time to go back to his car to get gloves, which he put on prior to taking the box from Haig. Paddock then loaded the box into the trunk of a dark gray vehicle, possibly a Chevrolet Impala.

## FORENSIC ANALYSIS OF AMMUNITION RECOVERED FROM PADDOCK'S ROOMS

7. The FBI investigators forwarded a substantial portion of the evidence collected during the Paddock investigation to the FBI Laboratory for forensic examination. Some of this evidence included unfired cartridges from Paddock's Mandalay Bay hotel room. The forensic examination of this evidence revealed the following with respect to the instant investigation:

   a. latent fingerprints found on two of the unfired .308 caliber (7.62mm) cartridges were identified as the fingerprints of Douglas Haig;

   b. these cartridges were marked with toolmarks consistent with markings made during reloading operations; and

   c. the bullets in the unfired cartridges with Haig's fingerprints on them were metallurgically classified as armor piercing/incendiary bullets.

8. Based on the above laboratory examination, the FBI has determined that the two unfired cartridges bearing Haig's fingerprints are classified as armor piercing ammunition. Specifically, the forensically examined ammunition was determined to be comprised of a penetrator (the armor piercing component), with an incendiary capsule in the nose.

9. Under Title 18, United States Code, Sections 922(a)(7), (a)(8), and 924(a)(1)(D), unlicensed individuals are prohibited from manufacturing or importing armor piercing ammunition.

10. Haig does not have a license to manufacture armor piercing ammunition.

## HAIG'S AMMUNITION BUSINESS

11. During the course of the instant investigation, law enforcement became aware that Douglas Haig operated an Internet based ammunition distribution business identified as "Specialized Military Ammunition." *See* "http://www.smammo.com."

12. This website was reviewed by law enforcement in the days following Paddock's attack and the home page advertised the availability of "HEAPI, API, and AP in .30 caliber / 7.62NATO." "HEAPI" is an acronym for High Explosive Amor Piercing Incendiary ammunition, "API" is an acronym for Armor Piercing Incendiary ammunition, and "AP" is an acronym for Armor Piercing ammunition.

13. When this website was reviewed by your Complainant again on October 16, 2017, the advertisement for these ammunition types had been removed. A second review of the website in 2018 revealed the website now states: "closed indefinitely."

## SEARCH OF HAIG'S RESIDENCE

14. On October 19, 2017, the FBI executed a federal search warrant at Haig's residence located at 4323 East Encanto Street, Mesa, Arizona. This search warrant was authorized by U.S. Magistrate Judge Bridget S. Bade, District of Arizona. Pursuant to that search warrant, special agents, with the assistance of the Phoenix FBI Evidence Response Team

(ERT), seized over 100 items, including live ammunition preliminarily identified as AP and API, multiple pieces of reloading equipment,[3] ammunition cans, a partially completed Federal Firearms License (FFL) application, ammunition sales records, documents, and multiple computers. Some of the seized items were flown to the FBI Laboratory for forensic analysis.

15. Laboratory analysis confirmed that some of the ammunition recovered during the search at Haig's residence was in fact reloaded armor piercing ammunition. Significantly, forensic analysis determined that the two unfired armor piercing cartridges from Paddock's Mandalay Bay hotel room (bearing Douglas Haig's fingerprints) had toolmarks consistent with the reloading equipment recovered in Haig's backyard workshop during the October 19, 2017 search.

## OCTOBER 24, 2017 INTERVIEW OF HAIG'S ASSOCIATE

16. On October 24, 2017, FBI and ATF agents interviewed Associate at his home located in Arizona. Associate agreed to speak with agents on a voluntary basis and the interview was conducted for the most part inside his garage. Associate quickly volunteered that, two weeks after the October 1 shooting, he had been with Douglas Haig at a gun show and machine gun shoot in northern Arizona. Following the gun show, he drove to Tucson, Arizona for a family function. Associate advised that, while there, his vehicle was burglarized, resulting in the theft of personal items and five (5) ammunition cans containing over 5,000 rounds of ammunition. Some of that ammunition was "API" and "HEAPI." Associate stated that he filed a report regarding the theft with the Tucson Police Department. Associate was asked if the ammunition that was stolen from him was ammunition provided by Haig. Associate advised it was ammunition he had purchased from Haig because he is trying to "get into the game." Associate

---

[3] The reloading equipment and a large portion of the ammunition were recovered from a backyard workshop which was secured with two separately locked doors. Search team personnel were provided instructions from Haig (via telephone) to determine the correct keys with which to open this workshop.

stated that Haig cut him a deal, but it was his intention to mark up the ammunition and sell it himself.

17. Later in the interview, Associate admitted he was aware that Haig reloaded AP type ammunition and later sold that ammunition. He further admitted to assisting Haig in this business and on at least one occasion reloading what he believed to be armor piercing ammunition. This occurred at Douglas Haig's direction and in Haig's backyard workshop. Additionally, Associate explained the circumstances under which Haig sold him the ammunition discussed earlier in the interview. According to Associate, following the gun show/machine gun shoot over the weekend of October 21, Haig sold Associate all of Haig's ammunition inventory for only $20.00. Associate stated that Haig said he did not want to be in possession of the ammunition if law enforcement arrested him on the way out of the event.[4]

## REVIEW OF SALES RECORDS AND DOCUMENTS

18. Analysis of the sales records and documents recovered from Haig's residence reflects more than one hundred instances of documented sales of AP, API, or HEAPI ammunition occurring throughout the country. The records revealed that Haig's business sold AP, API, or HEAPI ammunition to individuals and entities in states throughout the U.S., including, but not limited to: Texas, Virginia, Wyoming, and South Carolina.

19. Three of the identified sales were persons residing in the State and Federal District of Nevada. The FBI subsequently interviewed the purchasers (either in-person or over the telephone). The following is a summary of those interviews:

---

[4] Agents conducting the search at Haig's residence learned that he was in northern Arizona attending the gun show and machine gun shoot. During a brief telephone call with Haig, your Complainant advised him that a search was being conducted at his residence pursuant to a federal search warrant and that agents were not seeking to arrest him at that time. Although presented with the option to return to his residence, Haig opted to remain at the gun show.

a. "D.C." was interviewed at his residence located in Las Vegas, Nevada. During the interview, D.C. advised that he first discovered armor piercing rounds from "smammo.com" at a gun show at that Cashman Center in Las Vegas, Nevada in approximately 2015 or 2016. D.C. stated that he purchased approximately 20 rounds of silver tipped armor piercing ammunition from "Tom" in-person at that gun show. Between the years 2015 and 2017, D.C. made multiple small purchases of armor piercing ammunition from the smammo.com website because of the novelty of the rounds. D.C. indicated that he had never seen armor piercing rounds before and asked the owners where they obtained the AP rounds they were selling. The owners, whose names D.C. could not recall, stated that they manufactured the AP rounds and sold them to the United States Government. D.C. stated that he purchased a total of approximately 200 rounds of armor piercing ammunition from smammo.com and has fired five of the 200 rounds.[5]

b. "J.M." was interviewed at his residence located in Las Vegas, Nevada. J.M. stated that, between 2016 and 2017, he made approximately three small purchases of ammunition from smammo.com via the smammo.com website and in-person at a 2016 gun show at the Cashman Center in Las Vegas, Nevada. J.M. stated that the individual he purchased the ammunition from went by the name "Doug." J.M. purchased .223 and .308 caliber rounds from Doug. This ammunition was marked with black, silver, and green tips.[6] Doug explained that the black tips indicated armor piercing rounds, the silver tips indicated armor piercing incendiary rounds, and the green tips indicated "RAFOUS" rounds (armor piercing, incendiary, high explosive round with a high

---

[5] A review of relevant sales records indicates Haig recorded this sale on July 13, 2016.
[6] Your Complainant has learned that AP, API and HEAPI ammunition can often be marked with various colored paints applied to the bullet noses. This coloring permits the ammunition to be readily identified by type based on a common nose marking protocol.

explosive charge). J.M. stated that Doug also supplied him with a sample of a green tipped experimental round that Doug had created. J.M. stated that he purchased the rounds from Doug because the rounds were unique and that he had never before heard of anyone else who manufactured armor piercing and armor piercing incendiary rounds. J.M. stated that the rounds he purchased from Doug were expensive.

    c.    "W.M." was interviewed via-telephone. W.M. stated that he purchased ammunition from the specialized military ammunition website about a year ago. W.M. did some internet research and located this company. W.M. purchased armor piercing and incendiary .308 and .223 caliber ammunition but could not remember in what quantities. W.M. said he had not shot any of the ammunition and keeps it stored at his hunting cabin in Idaho. W.M. inquired about the ammunition through the website and ultimately purchased the ammunition through the website. Specialized military ammunition then shipped the order to his residence in Elko, Nevada. W.M. did not have any further communication with anyone related to the business during or after the purchase.[7]

20. One document found during the search of Haig's residence appeared to be a civil demand letter from a dissatisfied customer of Haig's, hereinafter referred to as "M.K." On October 26, 2017, M.K. was interviewed via telephone and he provided the following statements:

    a.    M.K. identified himself as a firearms and ammunition collector from Nebraska. M.K. recalled learning of Haig's business through its website and he eventually reached out to Haig via telephone. During the telephone call, Haig agreed to reload M.K.'s "brass" into armor piercing ammunition, in addition to refurbishing some WWII ammunition that M.K. had in his collection.

---

[7] A review of the relevant sales records indicates that Haig recorded this sale on November 13, 2016.

11

      b.    M.K. sent Haig the brass as discussed but never received the reloaded armor piercing cartridges. After not hearing anything for some time, M.K. had his attorney send the demand letter. Haig never replied and M.K. dropped the matter because the cost of litigation would outweigh his loss.

## CONCLUSION

21.    Based on the above facts and circumstances described herein, your Complainant believes there is probable cause that Douglas Haig conspired with others, known and unknown, to unlawfully, knowingly, and willfully, combine, conspire, confederate, and agree, together and with each other to manufacture and sell armor piercing ammunition, contrary to 18 U.S.C. §§ 922(a)(7), (a)(8), and 924(a)(1)(D), all in violation of 18 U.S.C. § 371.

Respectfully submitted,

_____
Christopher W. McPeak, Special Agent
Federal Bureau of Investigation

SUBSCRIBED and SWORN to before me
This __2d__ day of February, 2018.

_____
HONORABLE CARL W. HOFFMAN
UNITED STATES MAGISTRATE JUDGE

12

AO 442 (Rev. 11/11) Arrest Warrant

# UNITED STATES DISTRICT COURT
for the
District of Nevada

FILED
2018 FEB -2 AM 8:54
U.S. MAGISTRATE JUDGE
BY_____

| United States of America | ) | |
|---|---|---|
| v. | ) | |
| DOUGLAS HAIG | ) | Case No  2:18-mj-137-CWH |
| | ) | |
| | ) | |
| | ) | |
| Defendant | ) | |

## ARREST WARRANT

To:   Any authorized law enforcement officer

**YOU ARE COMMANDED** to arrest and bring before a United States magistrate judge without unnecessary delay
*(name of person to be arrested)*   DOUGLAS HAIG                                                                                                    ,
who is accused of an offense or violation based on the following document filed with the court:

☐ Indictment   ☐ Superseding Indictment   ☐ Information   ☐ Superseding Information   ☑ Complaint
☐ Probation Violation Petition   ☐ Supervised Release Violation Petition   ☐ Violation Notice   ☐ Order of the Court

This offense is briefly described as follows:

18 U.S.C. §371 - Conspiracy;
18 U.S.C. §§922(a)(7), (a)(8) and 924(a)(1)(D) - Manufacture of Armor Piercing Ammunition

Date: 2/2/18

*Issuing officer's signature*

C.W. HOFFMAN, JR.
*Printed name and title*
UNITED STATES MAGISTRATE JUDGE

City and state:   Las Vegas, Nevada

### Return

This warrant was received on *(date)* _____ , and the person was arrested on *(date)* _____
at *(city and state)* _____.

Date: _____

*Arresting officer's signature*

_____
*Printed name and title*